IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| GLENDA TURNER,<br>         Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>         Defendant. | Case No. 1:14-cv-01468-JEH |

**Order and Opinion**

Now before the Court is the Plaintiff Glenda Turner's Motion for Summary Judgment (Doc. 10), the Commissioner's Motion for Summary Affirmance (Doc. 18), and the Plaintiff's Reply (Doc. 21). For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for additional proceedings consistent with this Order and Opinion.[1]

**I**

In August 2011, Turner filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) alleging disability beginning on July 11, 2011. Her claims for DIB and SSI were denied initially on October 27, 2011 and denied upon reconsideration on March 26, 2012. On May 10, 2012, Turner filed a request for hearing concerning her application for Social Security benefits. A hearing was held before the Honorable Robert H. Schwartz (ALJ) on July 22, 2013, and at that time Turner was represented by an attorney. Following

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 8) on the docket.

the hearing, Turner's claim was denied on October 23, 2013. Her request for review by the Appeals Council was denied on October 17, 2014, making the ALJ's Decision the final decision of the Commissioner. Turner filed the instant civil action seeking review of the ALJ's Decision on December 9, 2014.

## II

At the time she applied for benefits, Turner was 46 years old living in Chillicothe, Illinois. At the time of the hearing, Turner was still living in her home in Chillicothe, alone. She earned her associate's degree in medical assisting and previously worked as an office assistant doing data entry, a housekeeper at a nursing home, and a medical records clerk. She testified that her last job ended because she missed too much work due to pain and repeated bouts of bronchitis. On her Form SSA-3368, Turner listed as the medical conditions which limited her ability to work fibromyalgia, restless leg syndrome, cervical spine fusion, Temporomandibular Joint syndrome, migraines, and Irritable Bowel Syndrome.

At the hearing, Turner testified that of all the physical issues she had, fibromyalgia was what bothered her the most at that time. She testified that the pain in her back was the worst and that her migraines bothered her a lot as well. She explained that her fibromyalgia symptoms had worsened within the last two to three years when she noticed that she experienced chronic fatigue, more extreme back pain, and stiffening joints. She described her baseline pain as a six out of 10 and her worst pain as a nine out of ten. On medication, Turner said that her pain was a six out of 10. Turner stated that walking, standing on her feet for a long time, bending, and lifting all made her pain worse. She testified that Dr. Ted Rogers, her primary care physician, prescribed all of her medications except for one which was prescribed by Dr. Joseph Couri, her rheumatologist. At the time of the hearing, she had seen Dr. Couri twice. Turner testified that Dr.

Couri informed her that water therapy would help to relieve her symptoms and he gave her trigger point injections for inflammation. She stated that yoga exercises, a heating pad, and a hot bath gave her some relief for a short time.

Turner also testified that she used prednisone daily to treat her fibromyalgia symptoms. She testified that she took other prescribed medications to treat bronchitis, residual symptoms from her neck surgery, restless leg syndrome, a thyroid condition, and depression and anxiety. She indicated that she would in the future continue to get pinpoint injections from Dr. Couri for her fibromyalgia. She attributed problems with concentration and focus to both her pain and medications.

In regard to a typical day, Turner testified that it would usually take her a couple of hours to get loosened and motivated and comfortable with her body, and then she would sit outside for a while, read some books, and watch a lot of television. She experienced trouble sleeping, and she never woke up rested. She testified to good days and bad days, and bad days occurred once every couple of weeks during which time she was bedridden. Turner stated that she was really never without symptoms of some sort. She testified that her pain traveled throughout her body to her head, knees, elbows, neck, shoulder, back, and everywhere.

At the hearing, the ALJ also heard testimony from a vocational expert.

### III

In his Decision, the ALJ determined that Turner had the following severe impairments: fibromyalgia, restless legs syndrome, cervical degenerative spine disease status post cervical spine fusion, Temporomandibular Joint syndrome, depression, and history of anxiety. The ALJ found Turner had the following Residual Functional Capacity:

3

> [The] capacity to perform light work as defined in 20 CFR 404.1527(b) and 416.967(b). Due to her combination of severe physical and mental impairments, she is limited to performing simple, routine, repetitive tasks on a sustained basis and any tasks should not require close, sustained interaction with others.

AR 25. In crafting the RFC, the ALJ considered Turner's testimony, x-rays, treating physician Dr. Rogers's treatment notes dated between 2010 and 2013, results from an October 2011 consultative examination with Dr. William J. Lopez, M.D., medical source statements from Dr. Rogers dated October 2011, a State agency physical evaluation dated October 26, 2011 and affirmed March 7, 2012, further medical source statements from Dr. Rogers dated January 2012, a State agency mental evaluation dated March 21, 2012, a note from Dr. Rogers dated April 26, 2012, a medical source statement from Dr. Rogers dated June 17, 2012, treating rheumatologist Dr. Couri's treatment notes dated March 2013 and June 2013, Dr. Roger's opinion dated May 20, 2013, and Dr. Roger's and Dr. Couri's treatment records provided post-hearing. Included in Dr. Rogers's treatment notes were repeated references to fibromyalgia. Dr. Lopez, too, indicated his impression to include, among other things, fibromyalgia. Dr. Couri's notes included that fibromyalgia was causing the vast majority of her symptoms.

Throughout the Decision, the ALJ noted his reasons for discrediting Dr. Rogers's opinion about Turner's ability to work in light of her medical condition. The ALJ rejected Dr. Rogers's July 2011 assessment because it "appear[ed] to be based on the subjective complaints of the claimant as there [was] no support for [the postural limitations and absence from work four or more days per month] in Dr. Rogers's treatment notes or the objective record." AR 27. With regard to Dr. Rogers's October 2011 medical source statements, the ALJ found: "These medical source statements appear to be based on the claimant's subjective complaints as there is no support for these limitations in Dr. Rogers's treatment

4

notes or the objective record. Dr. Rogers' [sic] opinions are conslusory [sic] and are given little weight." AR 28. The ALJ repeatedly re-stated his finding that Dr. Rogers's treatment notes were not supported by the objective record and that his opinions were based upon Turner's subjective complaints for each medical source statement provided by Dr. Rogers that was expressly considered in the Decision. The ALJ rejected Dr. Couri's notes for similar reasons. The ALJ noted that Dr. Couri had only recently been involved in Turner's care and had not seen her more than a few times before he endorsed disability. AR 32. The ALJ went on, "The statements are not supported by clinical evidence either but are instead based on [Turner's] allegations." AR 32.

The ALJ also discussed that in Dr. Rogers's June 24, 2013 notes, he assessed Turner with "drug seeking behavior" and it was indicated that after the appointment Turner was upset she was not given Percocet even though she had been given maximum narcotic medications. AR 31. Later in the Decision, the ALJ again referenced Dr. Rogers's assessment of "drug seeking behavior." The ALJ considered that, "It may be pain related but she was not forthright with the doctor and this decreases the credibility of her allegations in general, especially since the treating physician's endorsement of disability appears to be based on the claimant's allegations and little else." AR 32. When considering Dr. Couri's medical source statement and treatment notes, the ALJ stated, "As noted, the recent treatment note documenting 'drug seeking behavior' and the violation of her pain contract suggests that the claimant has not always been forthcoming with her treatment sources." AR 32.

## IV

Turner challenges the ALJ's analysis of the medical opinions of record. She argues that the ALJ erred when he failed to analyze the opinions of her longtime primary care physician and treating specialist in accordance with 20

C.F.R. § 404.1527 and prevailing Seventh Circuit precedent, especially where, as here, those assessments are not contradicted by any examining source.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).[2] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a

---

[2] Because the regulations governing the determination of disability for DIB, 20 C.F.R. § 404.1501 *et seq.*, are substantially identical to the SSI regulations, 20 C.F.R. § 416.901 *et seq.*, the Court may at times only cite to the DIB regulations.

continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

    1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

    2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

    3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

    4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

    5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

    The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

    In the instant case, Turner claims error on the ALJ's part at Step Four.

Turner emphasizes that medical opinions do not start on equal footing where, instead, treating specialists are generally accorded more weight than non-specialists, and treating and examining sources are generally favored over non-treating and non-examining sources pursuant to the Social Security Regulations. She argues that the ALJ did not consider all the requisite factors under 20 C.F.R. § 404.1527(c), and failed altogether to explain his assignment of minimal weight to the opinions of Drs. Rogers and Couri. Turner also argues that the ALJ minimized their opinions based upon speculation, substituted his lay opinion for that of both Dr. Rogers's and Dr. Couri's opinions, applied an improper standard for evaluating fibromyalgia by repeatedly emphasizing the lack of "objective evidence," and rejected every medical opinion based upon a purported overreliance by the doctors on Turner's subjective complaints.

The Commissioner counters that the fact that Turner had fibromyalgia symptoms did not mean she was disabled by them, that ample evidence supported the ALJ's conclusion that Dr. Rogers's opinions were entitled to little weight because unsupported by the record and based upon Turner's subjective complaints, that the ALJ reasonably found that Turner's drug seeking behavior was an additional basis to discount Dr. Rogers's opinions where his endorsement of Turner's disability appeared to be based upon merely her subjective complaints, and that the only thorough physical examination in the record (Dr. Lopez's) conflicted with Dr. Rogers's opinion.

### A

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). If the ALJ does not give a treating physician's opinion controlling weight, the Social Security

8

regulations require the ALJ to consider: 1) the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Furthermore, Section 404.1527(c) explicitly states that, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ failed to properly consider the weight to give the medical opinions of record, particularly those of treating physicians Dr. Rogers and Dr. Couri. In concluding that Dr. Rogers's and Dr. Couri's opinions were not entitled to controlling weight, the ALJ still had the duty to consider the relevant factors. Nevertheless, the ALJ failed to consider that Dr. Rogers served as Turner's primary care physician since 2008 and saw her frequently. The ALJ failed to consider that Turner was referred to Dr. Couri, a specialist, specifically for evaluation of her fibromyalgia who then, in fact, opined as to Turner's fibromyalgia. The ALJ failed to address the fact that Dr. Rogers's opinion was consistent throughout his treatment of Turner and consistent with medical records that pre-dated his treatment of Turner. The ALJ failed to discuss the fact that consultative examining Dr. Lopez's impression of Turner's mental and physical health was substantially similar to Dr. Rogers's repeated opinions as to Turner's impairments. Also, the ALJ failed to address the fact that Dr. Rogers's opinion was consistent with and supported by Dr. Couri's similar opinion, even when all the opinions of each treating doctor were considered. Because the ALJ did not sufficiently address the relevant factors under the Social Security Regulations, the ALJ did not build a logical bridge from the evidence of record to his conclusion that Dr. Rogers's and Dr. Couri's opinions were entitled to little

weight.  *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (explaining that an ALJ must build a logical bridge from the evidence to his conclusion).

### B

Instead of considering *all* of the relevant factors in his Decision, the ALJ rejected the treating doctors' opinions in favor of his view that those opinions were based only upon Turner's subjective complaints.  Certainly, an ALJ may discount a treating physician's opinion if it is based solely upon the patient's subjective complaints.  *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).  However, here, the ALJ did not correctly apply the case law permitting an ALJ to discount a treating physician's opinion merely based upon subjective complaints where one of the impairments upon which the treating doctors in *this* case opined was fibromyalgia.  As the Seventh Circuit Court of Appeals stated in *Bates v. Colvin*, 736 F.3d 1093, 1011 (7th Cir. 2013), the question of which physician's report to credit collapses into the credibility issue where a claimant's subjective complaints may be discounted by the ALJ.  In that regard, the Seventh Circuit has highlighted the "recurrent error made by the Social Security Administration's administrative law judges" of "discounting pain testimony that can't be attributed to 'objective' injuries or illnesses – the kind of injuries and illnesses revealed by x-rays."  *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015).  "An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."  *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014).

Turner cites to *Sarchet v. Chater* in support of her argument that the ALJ applied an improper standard for evaluating fibromyalgia.  In *Sarchet*, the Seventh Circuit described fibromyalgia as a "common but elusive disease" with cause or causes unknown and entirely subjective symptoms.  78 F.3d 305, 306 (7th Cir. 1996).  The Seventh Circuit further pointed out that there are no

laboratory tests for the presence or severity of fibromyalgia, and symptoms include multiple tender spots at fixed locations on the body. *Id.* As the Commissioner acknowledges in her Motion for Summary Judgment, Dr. Couri did note that Turner had all of the typical fibromyalgia tender points. Also, though the ALJ recited Dr. Lopez's October 7, 2011 consultative examination results in detail in the Decision, the ALJ failed to note that Dr. Lopez indicated "Trigger point muscular tenderness as defined." AR 332. Also, the ALJ's fixation on disregarding Dr. Rogers's and Dr. Couri's opinions because they were based only on Turner's "subjective" complaints meant the ALJ did not sufficiently acknowledge that Dr. Rogers and Dr. Couri unavoidably made their own observations of Turner during examination, and so their treatment notes were not simply undiscerning recitation of Turner's reports of her symptoms. They both, and Dr. Rogers repeatedly, indicated fibromyalgia as one of Turner's impairments. Ultimately, the ALJ's disregard of the subjective nature of fibromyalgia, coupled with the evidence he *did* have before him regarding Turner's fibromyalgia meant that the ALJ impermissibly played doctor. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Finally, the one instance in the record where Dr. Rogers noted that Turner exhibited "drug seeking behavior" which the ALJ used to discount both Turner's credibility and her treating doctors' opinions is not substantial evidence to support the ALJ's conclusion that her treating doctors' endorsement of disability was unreliable. Turner aptly points out that the ALJ was not yet aware of Dr. Rogers's note to give Turner an opportunity to explain at the hearing. The ALJ, by articulating so much acceptance of Dr. Rogers's singular note of drug seeking behavior (and without the benefit of elaboration from either Turner or Dr.

11

Rogers), persisted in ignoring an entire line of evidence contrary to his findings (and supportive of the treating doctors' opinions). S*ee Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001)("It is worth repeating that an ALJ may not ignore an entire line of evidence that is contrary to her findings . . . rather she must articulate at some minimal level her analysis of the evidence to permit an informed review") (internal citations and quotations omitted).  The ALJ must address the errors described above upon remand.

### V

For the reasons stated above, Turner's Motion for Summary Judgment (Doc. 10) is GRANTED, the Commissioner's Motion for Summary Affirmance (Doc. 18) is DENIED, and the matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to properly consider the treating doctors' opinions and other medical opinions of record in the manner required under 20 C.F.R. § 404.1527.

*It is so ordered.*

Entered on March 29, 2016.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE